UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:15-cr-52 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| DAVID JESS MILLER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### ORDER GRANTING DEFENDANTS' MOTIONS TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

This criminal case is before the Court on Defendants' motions to transfer venue pursuant to Federal Rule of Criminal Procedure 21(b) (Docs. 59, 61) and the parties' responsive memoranda (Docs. 64, 65, 66).

### I. BACKGROUND

On April 28, 2015, Artur Stepanyan and Mihran Stepanyan (collectively the "Stepanyans") and David Jess Miller, along with thirty other individuals, were charged in the Northern District of California ("CAND") by way of a multi-count indictment with: conspiracy arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961, *et seq.*), in violation of 18 U.S.C. § 1962(d); conspiracy to commit identity theft, in violation of 18 U.S.C. § 1028(f); conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); conspiracy to commit mail, wire, and bank fraud, in violation of 18 U.S.C. § 1349; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and <u>conspiracy to engage in unlicensed wholesale distribution of drugs</u>, in violation of

18 U.S.C. § 371.  Indictment at Doc. 1, *United States v. Karapedyan*, *et al.*, No. 3:15-cr-234-CRB (N.D. Cal., Apr. 28, 2015) (hereinafter, the "CAND Indictment").[1]

Eight days later, on May 6, 2015, the Government commenced the instant case against the Stepanyans and Miller, along with Miller's Minnesota corporation, Minnesota Independent Cooperative, Inc. ("MIC"; collectively with the Stepanyans and Miller, the "Defendants"), by way of a twelve count indictment, charging: conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); mail fraud, in violation of 18 U.S.C. § 1341 (Counts 2-11); and <u>conspiracy to engage in unlicensed wholesale distribution of drugs</u> and false statements, in violation of 18 U.S.C. § 371 (Count 12). (Doc. 3) (hereinafter, the "OHSD Indictment").

In short, the OHSD Indictment alleges that from July 2009 until at least April 2014, the Stepanyans sold diverted prescription drugs directly to Miller and MIC (and, prior to July 2009, indirectly sold diverted prescription drugs to Miller and MIC through a separately indicted co-conspirator); that Miller directed others to create fraudulent purchase orders, invoices, and pedigrees, in order to hide the fact that the drugs had just been purchased from illicit drug suppliers; and that Miller and MIC would then resell and ship the diverted prescription drugs to customers, including retail pharmacies and other wholesalers, in various states across the United States, including within the Southern District of Ohio. (Doc. 3 at ¶¶ 9-14).

---

[1] While first and second superseding indictments were subsequently filed in the Northern District of California case, neither superseding indictment appears to have affected the charges against Defendants, particularly as they relate to the issue of transfer for convenience. *See* Docs. 163 and 502, *United States v. Karapedyan*, *et al.*, No. 3:15-cr-234-CRB (N.D. Cal., July 7, 2015 and Feb. 11, 2016).

In large part, the charges brought against the Stepanyans and Miller in the Northern District of California appear to generally encompass the conduct charged in the OHSD Indictment. *See* CAND Indictment at Doc. 1, ¶¶ 12-13, 29. In other words, the OHSD Indictment appears to address specific conduct that occurred in Ohio, but which arose out of the overall scheme at the heart of the CAND Indictment.

## II. STANDARD OF REVIEW

Pursuant to Rule 21(b), "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against the defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interests of justice." Rule 21(b) is not intended to provide a mechanism for forum shopping by defendants and, further, "require[s] that a transfer for convenience satisfy the convenience of *both* parties." *United States v. Jamal*, 246 F. App'x 351, 369 (6th Cir. 2007) (emphasis in original). Ultimately, however, the decision to transfer a case lies within the discretion of the trial judge. *Id*.

## III. ANALYSIS

Defendants move to transfer this case to the Northern District of California, pursuant to Fed. R. Crim. P. 21(b). (Docs. 59, 61).[2] Defendants argue that transfer is appropriate as "the Northern District of California is the most convenient, efficient, and fair jurisdiction for the prosecution and trial …." (Doc. 61 at 3). Specifically, Defendants assert that "[t]he Stepanyans, Miller, MIC, the majority of witnesses, and all

---

[2] The Stepanyans jointly filed a Rule 21(b) motion (Doc. 59) and, subsequently, Miller and MIC jointly filed their own Rule 21(b) motion (Doc. 61).

3

the events at issue in trial are in California," and, therefore, "it is clear that the trial would be 'better off' in the Northern District of California." (Doc. 59 at 11). Moreover, Defendants state that transfer serves the interests of justice by avoiding inconsistent rulings and preventing the waste of judicial and prosecutorial resources. (Doc. 61 at 9).

### A. Transfer is Warranted Under Rule 21(b)

The Supreme Court has set forth a ten-factor test to be applied in determining whether to transfer a case under Rule 21(b): (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption to defendant's business if the case is not transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of each district or division involved; and (10) any other special elements which might affect the transfer. *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964); *United States v. Micciche*, 165 F. App'x 379, 385 (6th Cir. 2006).

In assessing the ten factors, *infra*, as applied in the instant case, the Court finds that transfer to the Northern District of California is appropriate.

#### 1. *Location of Defendants*

The location of the individual Defendants supports transfer, as the Stepanyans and Miller all reside in California. (Doc. 3, ¶ 9; Doc. 61 at 13). Significantly, while the individual Defendants actually reside in the Los Angeles area (*i.e.*, the Central District of California), they are requesting transfer to the Northern District of California, in an effort to consolidate the charges in one location. Thus, Defendants' request is also convenient –

4

or, at least, it is not necessarily inconvenient – for the U.S. Attorney's Office, as transfer allows the Government to merge the Ohio case with an already pending prosecution.

Further, Miller-owned MIC, a Minnesota corporation, (*i.e.*, neither California nor Ohio), largely ran its operations out of California. (Doc. 3, ¶ 9). Moreover, five MIC employees (James Russo, Jeannette Couch, Marie Polichetti, Bernardo Guillen, and Javier Ramirez) have been charged in the California case, but not in the Ohio case. (*Compare* CAND Indictment at Doc. 1 at 2, *with* OHSD Indictment at Doc. 3 at 1).

### 2. *Location of Witnesses*

Of the twelve non-government witnesses who testified at the grand jury in the Southern District of Ohio, four reside in California, while none reside in Ohio. (Doc. 61 at 15). Moreover, as Defendants assert, the discovery produced by the Government indicates that the majority of witnesses and evidence reside in California. (*Id.*)

Of course, as to the substantive mail fraud charges in the OHSD Indictment (Counts 2-11), the victim-witnesses are most likely still residents of Ohio and, thus, a trial in the Southern District of Ohio would be more convenient to those particular individuals. However, those specific counts address conduct that was part of an overarching scheme, as charged in the OHSD and CAND cases, which was not limited to Ohio, but spanned nationwide. Indeed, the U.S. Attorney's Office for the Northern District of California was aware of only three MIC customers located in Ohio and stated that the Ohio shipments constituted only 0.7% of MIC's sales. Tr. at Doc. 459 at 43:4-9, *United States v. Karapedyan, et al.*, No. 3:15-cr-234 (N.D. Cal., Feb. 10, 2016). Further, the Government states in its opposition that it intends to call witnesses from all across the

5

country for the Ohio trial. (Doc. 64 at 10). Thus, a transfer will not necessarily pose a greater inconvenience for those witnesses.

In short, due to the large number of witnesses and the expansive nature of the charges, any location will be convenient to some witnesses and not convenient to other witnesses.

### 3. *Location of Events Likely to be at Issue*

The alleged conduct occurred, or at least began, in California, where Miller and the Stepanyans allegedly conspired and largely operated their businesses of shipping unlicensed drugs. The allegation that some of those unlicensed drugs ultimately reached the Southern District of Ohio (after being re-routed through Puerto Rico and MIC in Minnesota) does not warrant piecemeal prosecution of individual conduct, when the most logical approach would be to center the prosecution to one location, at or around the 'nerve center' of the conspiracy, where there are already ongoing related proceedings. In this case, that 'nerve center' is in California.

### 4. *Location of Documents and Records Likely to be Involved*

Defendants assert that the document production shows that the evidence is largely found in California. Logically, the documents and records that exist were likely taken from Defendants' places of business, which are in California and Minnesota. Further, in the age of electronic discovery, any documents and records located in Ohio, or elsewhere, can be provided to prosecutors in California with little inconvenience.

6

### 5. *Disruption of Defendants' Work Unless Case is Transferred*

There will likely be a disruption of the Defendants' businesses if this case is not transferred, as the individual Defendants all live and work in California. Mihran Stepanyan owns and operates a salon in Sherman Oaks, California and states self-evidently that the business would suffer from his prolonged absence for a trial in Ohio, some 2,000 miles away. (Doc. 59 at 8). Artur Stepanyan is employed in California as a Sales Representative and his business presumably would likewise be compromised by a prolonged absence in Ohio. (*Id.*) Finally, Miller also lives and works in California. (*Id.* at 8-9). And while, admittedly, the Northern District of California is still a significant distance from the Los Angeles area where Defendants reside, San Francisco is nonetheless much closer and more convenient than Cincinnati.

### 6. *Expense to the Parties*

The expense to the Stepanyans and Miller, including the cost of transportation, lodging, and counsel, would be enormous if these cases were to proceed in two separate districts. Additionally, the Government will also have to expend significant financial resources to put on two separate trials and to transport witnesses and documents – many of which will likely be duplicative – if the cases proceed both in Ohio and California.

### 7. *Location of Counsel*

All Defendants initially secured counsel in California, while the subsequent OHSD Indictment led Defendants to retain counsel in Ohio as well. However, Defendants would like to proceed with counsel of their choice in close proximity to their residences. (Doc. 59 at 9). On the other hand, the Government has the ability to

7

prosecute this case in California essentially just as easily as in Ohio, because, in large part, the Government is already prosecuting the case in California.

### 8. Relative Accessibility of Place of Trial

While both locations – Cincinnati and San Francisco – are easily accessible, the Bay area offers a greater number of airports and, most significantly, is within driving distance (albeit several hours) from the location where Defendants reside.

### 9. Docket Conditions of Each District Involved

Significantly, during an in-court proceeding held on February 10, 2016, Judge Breyer stated the following in response to the news that a Rule 21 motion was anticipated in the Ohio case:

> I will want both the government and the defense to convey to that judge – I don't know which judge it is – that I will be pleased to accept the transfer, if that's what he wishes to do. He or she wishes to do. Totally not to my discretion. Not my judgment. But it would not be a burden on the Court.

Tr. at Doc. 459 at 43:4-9, *Karapedyan, et al.*, No. 3:15-cr-234 (N.D. Cal., Feb. 10, 2016). This Court is appreciative of that expression.

### 10. Special Elements

Finally, as to other special elements, this case, unlike most any other requesting transfer, has a similar case already pending against Defendants in the district to which they are requesting transfer. Indeed, given the scope of the related case, this Court sees <u>no reason</u> why the Northern District of California would not be the most convenient and logical location for prosecution of all charges arising from the alleged drug diversion scheme, including the Ohio charges.

8

Further, contrary to the Government's assertion, the existence of related cases pending against co-conspirators in this Court does not preclude transfer. None of the Government's Ohio co-conspirators are co-defendants, and all six co-conspirators have pleaded guilty in Cincinnati. Thus, the possibility of duplication of trial is not present.

### B. Venue is Not Improper in the Northern District of California

The Government argues that transfer of the mail fraud counts alleged in Ohio to the Northern District of California is not proper because the proposed transferee district would not have venue over said counts.[3] (Doc. 64 at 6). However, even assuming that none of the conduct alleged in the Ohio mail fraud counts began or passed through the Northern District of California,[4] improper venue would not hinder prosecution if Defendants waive the issue, which all Defendants have so done in this case, both expressly and impliedly, by filing the motions seeking transfer. (Doc. 65 at 3-4; Doc. 66 at 3-4); *see United States v. Mobley*, 618 F.3d 539, 546 (6th Cir. 2010) ("defendants *can* waive venue objections") (emphasis in original). That is, "[i]n a criminal case a defendant may waive the right to trial in the district where the crime was committed by

---

[3] The Government does not deny that venue for the conspiracy charges is proper in the Northern District of California.

[4] Criminal acts that "consist of distinct parts which have different localities" are considered "continuing offenses" and "the whole [crime] may be tried where any part can be proved to have been done." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999); *see also United States v. Davis*, 531 F. App'x. 601, 605 (6th Cir. 2013) ("venue is proper in all locations in which the acts constituting a particular crime took place"). Absent an express venue provision in the criminal statute, 18 U.S.C. § 3237 is applicable to determine proper venue for "continuing offenses." *United States v. Zidell*, 323 F.3d 412, 422 (6th Cir. 2003). Section 3237(a) provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

9

requesting the court to transfer the proceedings to another district 'for the convenience of parties and witnesses and in the interest of justice.'" *In re Appl. to Take Test. in Crim. Case Outside Dist.*, 102 F.R.D. 521, 523 (E.D.N.Y. 1984) (quoting Fed. R. Crim. P. 21(b)).[5]

Accordingly, here, Defendants have waived any question of venue simply by filing their motions to transfer under Rule 21.

### IV. CONCLUSION

Transferring the present Ohio case to be heard before the Northern District of California is far more logical and convenient, would avoid the risk of inconsistent rulings, and would result in a significant savings of judicial and prosecutorial resources. Transfer would save resources for Defendants as well.

Venue is proper in the Northern District of California as to all counts alleged in the OHSD Indictment, as Defendants' motions under Rule 21(b) serve as waivers of any deficiencies.

Here, because Defendants have met their burden under Rule 21(b) and Supreme Court authority, *see Platt supra*, Defendants' motions to transfer (Docs. 59, 61) are hereby **GRANTED.**

---

[5] *See also* Fed. R. Crim. P. 21, Advisory Committee Notes ("the defendant has a constitutional right to a trial in the district where the offense was committed, Constitution of the United States, Article III, § 2, Par. 3; Amendment VI. By making a motion for a change of venue, however, the defendant waives this constitutional right"); *United States v. Williams*, 437 F. Supp. 1047, 1051 (W.D.N.Y. 1977) ("A motion by defendant for change of venue is deemed a waiver of his constitutional and statutory right under Fed.R.Crim.P.18 to be tried in the district in which the alleged offense was committed").

10

The Clerk **SHALL** forthwith send the file of this case to the transferee district, pursuant to Fed. R. Crim. P. 21(c), as well as anything further required to effect transfer.

**IT IS SO ORDERED**.

Date:   5/17/16

Timothy S. Black
United States District Judge